## Arlington

RAYMOND STANLEY THARRINGTON

v.

COMMONWEALTH OF VIRGINIA

No. 0092-84

Decided July 1, 1986

Counsel

Gary A. Hicks (Gary A. Hicks and S.W. Tucker, Hill, Tucker & Marsh, on brief), for appellant.

Margaret Poles Spencer, Assistant Attorney General (William G. Broaddus, Attorney General, on brief), for appellee.

Opinion

DUFF, J.—Raymond Stanley Tharrington was convicted by a jury of attempted aggravated sexual battery of an eleven-year-old child, in violation of Code § 18.2-67.3(1), and was sentenced to serve five years in the penitentiary.

The issues presented in this appeal are whether the evidence was sufficient to find beyond a reasonable doubt that: 1) Tharrington intended to touch the victim's intimate parts or the clothing covering her intimate parts;[1] and 2) Tharrington committed an overt act in furtherance of the offense of touching the victim's intimate parts or clothing covering her intimate parts.

The evidence showed that the victim was visiting Tharrington's daughter one afternoon after school. The two girls, both minors, attended the same school and were neighbors and friends. At some point, Tharrington's daughter told the victim that her father wanted her to try on a pair of pants for him. The victim put on the pants and went downstairs to the living room where Tharrington was waiting.

When the victim entered the room, Tharrington instructed her to close and lock the door to prevent their conversation from being

---

[1] Aggravated sexual battery consists inter alia of the sexual abuse of the complaining witness who is less than thirteen years of age. The term "sexual abuse" means *inter alia* "an act committed with the intent to sexually molest, arouse, or gratify any person, where: (a) [t]he accused intentionally touches the complaining witness's intimate parts or clothing covering such intimate parts." Code § 18.2-67(10).

overheard. Tharrington stated that his daughter's birthday was approaching and he wanted to talk about a party and gift for her. He then asked the victim about the size of the pants she was wearing, stating that he was considering clothing as a gift for his daughter. When the victim responded that she did not know the size, Tharrington asked her to pull the pants down to her knees so that he could check the size. The victim testified that because she was afraid and confused, she complied with his request and pulled her pants down to the top of her thighs. At this point, Tharrington was standing in front of her approximately one foot away.

Once the victim pulled her pants down, Tharrington felt around the inside of the waistband as if he were looking for a tag. When he finished, she started to pull her pants back up, but Tharrington stopped her, stating that he liked her underpants and asking if there was a tag in them. When she responded that there was no tag, Tharrington told her she could pull up her pants.

Next, Tharrington asked to see the inside of the victim's shirt. She lifted the corner of her shirt, but Tharrington asked her to unbutton it. Once her blouse was unbuttoned, her bra was exposed. Tharrington then took one side of her shirt and pulled it back, feeling inside.

After the victim buttoned her blouse, Tharrington sat on the floor in front of her. He then asked her several times if he could touch her, offering her money and clothing in return, but she said no. Finally, Tharrington allowed the victim to leave. Before she left, he told her not to tell anyone about the incident or she would get in trouble.

Tharrington contends that his conduct did not amount to an attempted aggravated sexual battery. He argues that the Commonwealth's evidence did not prove beyond a reasonable doubt that he intended to commit the offense or that he committed an overt act towards the consummation of the offense. We disagree.

To establish the offense of attempted aggravated sexual battery, the Commonwealth was required to prove that Tharrington intended to sexually abuse the victim and that he did a direct, ineffectual act toward the commission of the offense. *See Chittum v. Commonwealth*, 211 Va. 12, 15, 174 S.E.2d 779, 781 (1970). Intent is the purpose formed in a person's mind and may be shown

by the circumstances surrounding the offense, including the person's conduct and his statements. *Id.* at 16, 174 S.E.2d at 781; *Nobles* v. *Commonwealth*, 218 Va. 548, 551, 238 S.E.2d 808, 810 (1977).

The conduct and statements that demonstrated Tharrington's intent to abuse the victim included his request that she try on his daughter's pants and enter a room with him, closing and locking the door behind her. He then asked her to pull her pants down to her knees and unbutton her blouse. He felt inside the waist band of her pants and inside her blouse. He commented that he liked her underpants. Finally, Tharrington asked several times if he could touch her, offering her money and clothing in return. Based upon Tharrington's conduct and statements, and the circumstances surrounding the incident, the jury was justified in finding beyond a reasonable doubt that Tharrington intended to sexually abuse the victim by touching the victim's intimate parts or the clothing covering her intimate parts.

■ Tharrington's contention that the evidence failed to demonstrate a direct, ineffectual act done toward the commission of the offense is also without merit. Such an act is not required to be the last proximate act toward the completion of the offense, but it must go beyond mere preparation and be done to produce the intended result. *See Martin* v. *Commonwealth*, 195 Va. 1107, 1110-11, 81 S.E.2d 574, 577 (1954). An overt act is required to prove an attempted offense because without it, there is too much uncertainty as to the accused's actual intent. *State* v. *Bell*, 311 N.C. 131, 141, 316 S.E.2d 611, 616 (1984). However, if "the design of a person to commit a crime is clearly shown, slight acts done in furtherance of this design will constitute an attempt." *Id.* at 141, 316 S.E.2d at 616; *Martin*, 195 Va. at 1112, 81 S.E.2d at 577.

The evidence of an overt act in *Chittum* was that the defendant abducted the victim and her cousin at gunpoint and forced them to drive to a secluded area. He then made the cousin lie on the ground some distance from the car and ordered the victim to lie on the seat. When the victim protested, stating that she was a virgin, the defendant told her he would be gentle. The victim was able to escape when the defendant got out of the car to warn the cousin to stay away. The defendant was unzipping his pants as he started to pursue her. In finding that the evidence was sufficient to sustain the conviction for attempted rape, the court noted that the

acts of the defendant were well calculated to accomplish the intended result. 211 Va. at 16-17, 174 S.E.2d at 782.

In *State* v. *Moser*, 74 N.C. App. 216, 328 S.E.2d 315 (1985), the defendant intruded upon the victim while she was in the bathroom. While blocking her exit, he told her to take off her clothes, and then he put his hand on her shoulder and kissed her on the mouth. The defendant next asked her to go into the bedroom with him and asked her questions about sexual behavior. When she failed to cooperate, the defendant threatened her with a knife. Only after the victim told him that her father was a federal judge did he put away the knife. The defendant let the victim leave after she promised to meet him at a restaurant that evening. Later, the defendant told the police that he wanted to have sex with the victim and scare her. In finding that the evidence was sufficient to prove an attempt, the court stated "that the acts of ordering [the victim] to disrobe, blocking her exit from the bathroom, kissing her and displaying [a] knife were sufficient 'overt acts' to complete the crime of attempted first degree rape." *Id.* at ___, 328 S.E.2d at 318.

The evidence in *Bell*, 311 N.C. 131, 316 S.E.2d 611 (1984) showed that the defendant and his brother drove two girls to a secluded spot, told them that they were going to have sex with them and ordered them to remove their clothes. The defendant and his brother had a conversation regarding which girl each wanted, and made repeated references to "getting some sex." When the defendant got out of the car with one of the girls, she broke free and ran for help. At trial, she testified that she was afraid the defendant would hit her if she refused to comply with his sexual demands. The defendant testified that he wanted to have sex with the victim, but he did not want to force himself on her. In finding that the defendant had committed an attempted rape, the court stated that the "evidence of intent, coupled with the defendant's act in ordering the women to remove their clothes, was sufficient to sustain his conviction." *Id.* at 140, 316 S.E.2d at 616.

Whenever the design of a person to commit a crime is clearly shown, slight acts done in furtherance of this design will constitute an attempt, and this court will not destroy the practical and common sense administration of the law with subtle-

ties as to what constitutes preparation, and what an act done toward the commission of a crime.

*Martin*, 195 Va. at 1112, 81 S.E.2d at 577.

In the present case, Tharrington committed several acts that can be characterized as well calculated to produce the intended result of touching the victim's intimate parts or the clothing covering her intimate parts. He asked her to come into a locked room with him. He told her to pull her pants down, felt around the inside of her waistband and stopped her when she went to pull up her pants. He told her he liked her underpants and asked to check them for a tag. He asked her to unbutton her blouse and felt inside it. Finally, he repeatedly asked if he could touch her. Taken collectively, these acts clearly represent Tharrington's design to touch the victim's intimate parts or the clothing covering her intimate parts. Tharrington's request that she close and lock the door, his request that she pull down her pants and unbutton her blouse, and his act in preventing her from pulling up her pants were overt acts in furtherance of his intent to sexually molest her. The jury was justified in finding that Tharrington committed a direct act toward the commission of the offense.

Tharrington argues that the evidence did not show an act in furtherance of any specific or evil intent. He contends that the Commonwealth was required to prove that the overt act occurred after it was shown that he had an evil intent. He further contends that an evil intent was not shown before he asked the victim if he could touch her and that after she denied his request, he allowed her to leave. The Commonwealth responds that intent may be expressed or inferred, and that the jury could have reasonably inferred Tharrington's evil intent prior to any specific expression of that intent. *See Nobles*, 218 Va. at 551, 238 S.E.2d at 810. We find that Tharrington's conduct and statements throughout the offense were inconsistent with an innocent intent and clearly demonstrated the requisite criminal intent.

For the reasons stated herein, the judgment of conviction is

*Affirmed.*

Keenan, J., and Cole, J., concurred.