COURT OF APPEALS OF VIRGINIA

Present: Judges Baker, Benton and Overton
Argued at Salem, Virginia


ROBERT LEE BROCK

v.        Record No. 0756-94-3        MEMORANDUM OPINION*
                                   BY JUDGE JOSEPH E. BAKER
COMMONWEALTH OF VIRGINIA                DECEMBER 19, 1995


FROM THE CIRCUIT COURT OF THE CITY OF STAUNTON
Rudolph Bumgardner, III, Judge

(William E. Bobbitt, Jr., Public Defender),
for appellant. Appellant submitting on brief.

Thomas C. Daniel, Assistant Attorney General
(James S. Gilmore, III, Attorney General; Robert B.
Condon, Assistant Attorney General, on brief),
for appellee.


Robert Lee Brock (appellant) was awarded an appeal only from

his bench trial convictions by the Circuit Court of the City of

Staunton (trial court) for nine counts of attempted breaking and

entering in the nighttime. In addition, appellant was convicted

of three counts of breaking and entering and four counts of grand

larceny. Those counts arose from events that occurred at the

same area the attempted break-in counts are alleged to have

occurred. The sole issue presented by this appeal is whether the

evidence is sufficient to support the convictions for the nine

counts of attempted breaking and entering in the nighttime.

Upon familiar principles, we state the evidence in the light

most favorable to the Commonwealth, granting to it all reasonable

_____

*Pursuant to Code § 17-116.010 this opinion is not

designated for publication.

inferences fairly deducible therefrom.  Higginbotham v.
Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975).
On July 30, 1993, appellant along with two accomplices, James
Adams (Adams) and James Sandy (Sandy), carried out a series of
breaking and enterings and larcenies in the City of Staunton.
Prior to trial, co-defendants Adams and Sandy entered into a plea
agreement with the Commonwealth to testify against appellant.

The evidence established that on July 30, 1993, appellant,
Adams, and Sandy broke into, and stole goods from, three separate
storage units located at a mini-warehouse storage complex owned
by Calvin VanFossen (VanFossen).  The attempted breaking and
enterings are alleged to have occurred at nine other units of the
359-unit mini-warehouse complex.  The evidence introduced to link
appellant to the commission of the nine alleged attempted
breaking and enterings was the testimony of the two co-defendants
Sandy and Adams, and the testimony of VanFossen.

Adams testified:
    Q.  Did you [load](?) items on the
truck?

    A.  Yeah.  Then when I was doing that
[appellant] went up, was up a few doors on
the storage sheds, I don't know.  Four or
five doors or something like that, doing
something.  Then he said something to me
about come over here and I walked up there
and he was pulling on a lock.  It appeared to
be like a big screw driver and he said that
he didn't have his key but he was trying to
find, he thought that this one was an easy
one.

- 2 -

Q.  This one was an easy one?

A.  Yeah, that the lock was easy and he thought he would just go ahead and take the lock off.  So then he asked me to try it.  So I tried it and it didn't come open.  So he was walking back, kept looking around, looking at the numbers and said yeah, I'm sure this was it and, at that point I was like, I am confused here so I just walked back to the truck.  And at that time we just all got back in the truck and left.

Q.  Do you know how many storage sheds [appellant] tried to get into?

A.  I didn't notice.  Other than that that is all I know.

Sandy testified:

Q.  I'm sorry, okay, okay, you went to the storage buildings with the defendant driving in his truck and you loaded up the sofa and chair and what else?

A.   If I remember correctly, [appellant] went around to a couple other little places there and picked up some more stuff and I couldn't tell you which one of the buildings it was.

Q.  Do you remember how many sheds were entered or attempted to be entered?  Do you have any idea?

A.  Not exactly, no.

     *    *    *    *    *    *    *

Q.  Did you try to open some of the sheds?

A.  No sir.

Q.  Who was doing that?

A.  [Appellant].

Q.  Was Mr. Adams helping with that?

- 3 -

A.   I don't know.  He was out running around too.  I couldn't tell you if he was trying to open up any or not.

Q.   So you don't know how many they tried to open?

A.   No I don't.

Q.   But you know they got a sofa and chair out of one and some other items out of another?

A.   I believe so, yes sir.

Q.   All right, now after that, what were you all using, what were they using to get in, do you know?

A.   [Appellant] had a great big old long mechanic tool.  It looks like a crow bar but it is not shaped like one.  It's straight and it's got a, like a wood handle to it. It's like you know, you go to pull off the heads of something onto a car, something like that.

Q.   Okay. And that's what they took with them to . . .

A.   That was inside the front seat of the truck, yeah.

Q.   All right, did they take it with them when they got out of the truck?

A.   Yes sir.

VanFossen testified to what he observed when he came to work the next morning.  VanFossen said that he observed three storage units, numbers 313, 315, and 330, where the locks had been broken, the doors damaged, and entry gained.  He said that he had examined nine other units, numbers 318, 319, 321, 322, 323, 334, 337, 338, and 339, where the doors had been damaged but entry had not been gained.  VanFossen also testified that there were 359

– 4 –

units at his business and that he had previously had trouble with "people either breaking into [his] warehouse units" or attempting to break-in. The parties stipulated that Ernie Reed who worked for VanFossen, and was present in court, if called to testify would say that he had observed the same things that VanFossen described. Matthew Bird, one of VanFossen's tenants, testified that his rental unit was broken into on this occasion and that same storage unit had been broken into about a month before.

There was no evidence presented as to the condition of units 318, 319, 321, 322, 323, 334, 337, 338, and 339 prior to July 30, 1993, or whether the damages to the doors to those units appeared to be recently made.

Co-defendant Adams, testifying on behalf of the Commonwealth, described seeing appellant breaking into one of the units not included in the nine involved in this appeal. He described appellant as not initially being successful in his break-in on one of the units and that appellant "was walking back, kept looking around, looking at numbers and said 'yeah, I'm sure this was it . . .'" thus appearing to be interested in one particular unit. When the prosecutor attempted to solicit testimony from Sandy and Adams, about the nine units related to this appeal, both men denied any knowledge of appellant's attempt to enter those units.

"An attempt to commit a crime consists of (1) the specific intent to commit the particular crime, and (2) an ineffectual act

done toward its commission." Bell v. Commonwealth, 11 Va. App. 530, 533, 399 S.E.2d 450, 452 (1991) (quoting Lynch v. Commonwealth, 131 Va. 762, 109 S.E. 427 (1921)). "Intent is a state of mind which can be evidenced only by the words or conduct of the person who is claimed to have entertained it." Banovitch v. Commonwealth, 196 Va. 210, 216, 83 S.E.2d 369, 373 (1954). "An overt act is required to prove an attempted offense because without it, there is too much uncertainty as to the accused's actual intent." Tharrington v. Commonwealth, 2 Va. App. 491, 493, 346 S.E.2d 337, 339 (1986). Here, there is evidence that this appellant committed overt acts toward other units but there is no evidence that he was the criminal agent who damaged the nine entrances to the specific units for which he stands convicted. While it is true that it came to the attention of the owner and one of his employees that the nine units of the 359-unit mini storage had been damaged, there is no evidence as to when either of these persons last observed the particular units. Additionally, there is evidence that within approximately thirty days prior to the discovery there had been other break-ins. We are of opinion and hold that the evidence is insufficient to support appellant's guilt as the criminal agent who damaged units 318, 319, 321, 322, 323, 334, 337, 338, and 339.

The Commonwealth argues that even if we held the evidence is insufficient, we should not consider this appeal because

appellant at no time made a motion to strike the Commonwealth's evidence and at his sentencing hearing, he made statements inconsistent with statements he made at trial.

In support of its inconsistency argument, the Commonwealth cites Beavers v. Commonwealth, 150 Va. 33, 142 S.E. 402 (1926). The facts in that case are distinguishable from those before us. Here appellant consistently denied any involvement with the nine units. There was no relevant inconsistency in his testimony at trial and at sentencing.

As the Commonwealth argues, appellant did not specifically make any motion to strike the evidence that was based upon insufficiency. However, in his closing argument, counsel for appellant addressed the trial court, saying:

> [M]y client is charged with a number of attempted, attempts to break-in to, I believe it is nine of those warehouses, Judge I don't think the Court has heard evidence that would in any way sufficiently tie my client to going to the first one through the ninth one. [Adams and Sandy] have talked about going into a warehouse and taking some items out but neither of them, and they then digress into we were just kind of there and . . . I'd ask the Court to give great weight to the Commonwealth's witnesses in what they had to say about attempted break-ins at a number of, of the warehouse, the specific units.

Citing Williams v. Commonwealth, 6 Va. App. 412, 368 S.E.2d 293 (1988), the Commonwealth argues that the sufficiency of the evidence argument cannot be considered by this Court. The Commonwealth then properly cites a later en banc decision by this Court in Campbell v. Commonwealth, 12 Va. App. 476, 405 S.E.2d 1

(1991), in which we said:

> To the extent that [the case] holds that an appeal of the sufficiency of the evidence is barred by the failure to move to strike the Commonwealth's evidence at the conclusion of the defendant's evidence even if the issue is <u>clearly presented to the trial court by a motion to strike at the conclusion of the Commonwealth's evidence **and** in a closing argument to a trial court</u>, we overrule it.

<u>Id.</u> at 481, 405 S.E.2d at 3 (emphasis added).  The Commonwealth further argues that the sufficiency issue was not "clearly presented" to the trial court in the closing argument and, therefore, appellant is barred from making the sufficiency argument in this appeal.  Assuming, without deciding, that the sufficiency argument made in closing argument was not "clearly sufficient" to advise the trial court that appellant intended for his argument to be a motion to strike, we hold that on this evidence the ends of justice require that appellant's convictions cannot be justified when the evidence does not prove that appellant was the criminal agent.

Accordingly, the judgment of the trial court is reversed and appellant is dismissed from further prosecution on these charges.

<u>Reversed and dismissed.</u>